JUDGE BRICCETTI



# 11 CIV 6513

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

U.S. RE COMPANIES, INC., and its affiliates,

                **Plaintiff,**

      v.

ARTHUR T. DOUGHERTY,

                **Defendant.**

---

CIVIL ACTION
NO:_____

NOTICE OF REMOVAL



Defendant, Arthur T. Dougherty, by his undersigned attorneys, respectfully notifies this Court of the removal of the instant action, pursuant to 28 U.S.C. §§ 1441(b) and 1446, from the Supreme Court of the State of New York, Rockland County, to the United States District Court for the Southern District of New York. Grounds in support of removal are as follows:

1.    Plaintiff, U.S. RE Companies, Inc., and its affiliates, commenced the above-entitled action by filing a Summons and Complaint in the Supreme Court of the State of New York, Rockland County, Index No. 032236/2011 on or about September 1, 2011. A copy of the Summons and Complaint is attached as Exhibit A.

2.    The Summons and Complaint were served on Defendant on or about September 6, 2011. No other process, pleading, or order has been served on Defendant in this action.

3.    Accordingly, this Notice of Removal is being filed within thirty (30) days of Defendant's receipt of a copy of the initial pleading setting forth the claim for relief upon which the action is based, as required by 28 U.S.C. § 1446(b).

4.    This is a civil action in which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is incorporated in Delaware and its

principal place of business in is New York; Defendant is a citizen of Connecticut. The $75,000 jurisdictional threshold is also satisfied.

5.     The Complaint does not include a specific monetary demand; however, based on the allegations in the Complaint, and as discussed more fully in paragraphs 6 though 14 below, there is more than a reasonable probability that an amount in excess of $75,000 is at issue in this action. See *Scherer v. The Equitable Life Assurance Society of the United States,* 347 F. 3d 394, 397 (2d Cir. 2003) (citations omitted) (holding "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount" and identifying this burden as "hardly onerous.")

6.     The Complaint alleges that Plaintiff U.S. RE is "one of the world's largest reinsurance brokers with clients around the globe" (Complaint at ¶ 10) and that Dougherty was the "head of U.S. RE's United States reinsurance business" (Complaint at ¶ 6).  Plaintiff claims Defendant misappropriated U.S. RE's confidential and proprietary information, breached his fiduciary duty of loyalty, and engaged in unfair competition when he allegedly solicited an employee of Plaintiff to terminate his employment and disclosed confidential client information to Holborn, Plaintiff's competitor (Complaint ¶ 11), in an effort to allegedly "steal" Plaintiff's current and prospective clients.  (Complaint ¶ 1).

7.     The Complaint also alleges that "Dougherty obstructed U.S. RE's attempts to secure reinsurance business" on "multiple occasions" and that "while employed by U.S. RE, Dougherty was directly or indirectly in contact with [Holborn] to disclose U.S. RE's business prospects." (Complaint ¶¶ 17, 18).  The Complaint alleges further that, "while still working for U.S. RE, Dougherty failed [to] aggressively pursue certain new prospective business [for U.S. RE]" which allegedly resulted in the U.S. RE's inability to secure this new business (Complaint ¶ 25).

8.      The Complaint further alleges that the foregoing was in breach of Dougherty's confidentiality and non-competition agreements, for which Plaintiff allegedly "paid Dougherty a substantial sum of money" including a "base annual salary of $275,000, plus an annual automobile allowance of $16,500." (Complaint ¶ 16).

9.      Significantly, Plaintiff alleges that Dougherty's alleged conduct "has resulted and will continue to result in *serious economic harm* to Plaintiff" (Complaint ¶ 1) (emphasis added). The Complaint seeks, among other things, a declaratory judgment and unspecified compensatory, consequential and punitive damages.

10.      Courts in this circuit have addressed similar issues about the jurisdictional monetary threshold on several occasions.  For example, in *Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477 (S.D.N.Y. 2003), the court considered whether the $75,000 jurisdictional threshold was satisfied where the complaint alleged damages of $50,000, but also included demands for equitable relief enforcing a restrictive covenant.  The court noted, "Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction.  In calculating that impairment, the court noted that it may look not only at past losses but also at *potential* harm." *Id.* at 481 (internal quotations and citation omitted; emphasis added).

11.      The injunctive relief sought in *Maxons* was identical to that requested by U.S. RE - restriction of the defendant's post-employment business activities. The court noted: "The 'potential harm' that Maxons seeks to prevent by restricting Newman's business activities is perfectly obvious: Maxons does not want to lose business to United, a direct competitor and Newman's present employer." *Id.* at 483.  The court held, "Newman is now working for United, a direct competitor, active in geographical areas where Maxons also does business.  Common sense mandates the conclusion that the potential harm to Maxons inherent in Newman's employment for the next two years is at least [in excess of $75,000]. . . . [Indeed], the potential

diversion by Newman of only one restoration project from Maxons to United during the next two years establishes the jurisdictional amount; but the potential loss to Maxons is clearly greater than that." *Id.* at 484.

12.     In *NSI International, Inc. v. Mustafa,* 2009 U.S. Dist. LEXIS 73909 (E.D.N.Y., Aug. 20, 2009), the court examined the jurisdictional monetary threshold in light of a claim for declaratory relief (specifically, that "defendant's termination was not based on unlawful discrimination and that, even if plaintiff entered into an employment contract with defendant, defendant's employment was terminated for cause.") *Id.* at *25. The court held: "[D]efendant has satisfied her burden of demonstrating a reasonable probability that the benefit potentially accorded to plaintiff and/or injury averted by the grant of the requested declaratory judgment exceeds the $75,000 jurisdictional minimum, in satisfaction of 28 U.S.C. §1332 and, therefore, this Court may properly exercise diversity jurisdiction over this action." *Id* at *29.

13.     Likewise, in *Cooper Wiring Devices, Inc. v. Novikov,* 2007 U.S. Dist LEXIS 57923 (E.D.N.Y., Aug. 8, 2007), the court found that the "reasonable probability" standard was satisfied where the plaintiff alleged, among other things, "Novikov impermissibly utilized trade secrets and confidential and proprietary information belonging to Cooper Wiring regarding its development of radio frequency remote control devices and technologies for other products." *Id.* at *10-11.

14.     Taken separately, there is a "reasonable probability" that *each* of the several claims for relief Plaintiff asserts in the Complaint more than satisfy the $75,000 monetary threshold for diversity jurisdiction. Moreover, taken together, the allegations of lost business due to Defendant's alleged actions and inactions, unfair competition, breach of contract, breach of fiduciary duty of loyalty and Plaintiff's demand for declaratory judgment enforcing the restrictive covenants, coupled with Plaintiff's allegation that, as "one of the world's largest reinsurance brokers with clients around the globe" (Complaint ¶ 10), it has allegedly suffered

"serious economic harm" (Complaint ¶ 1) as a result of Defendant's alleged conduct, demonstrates that there is far more than a reasonable probability that the damages at issue are in excess of $75,000 and the monetary jurisdictional threshold has been satisfied.

15.     Removal of this action is authorized by 28 U.S.C. § 1441(b); Defendant is not a citizen of New York.

16.     Venue is proper in the Southern District of New York, White Plains Division, because it is the District where the action is pending in state court.

17.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal shall be given to plaintiff, and a copy of this Notice of Removal shall be filed with the Clerk of the Court for the Supreme Court of the State of New York, Rockland County.

18.     Based on the foregoing, removal is proper.

WHEREFORE, notice is hereby given that this action is removed from the Supreme Court of the State of New York, Rockland County, to the United States District Court for the Southern District of New York.

Dated: September 16, 2011                    Respectfully submitted,

                                             Richard J. Reibstein
                                             Russell E. Adler
                                             PEPPER HAMILTON LLP
                                             620 Eighth Avenue, 37th Floor
                                             New York, New York 10018
                                             T: (212) 808-2700
                                             F: (212) 286-9806
                                             reibsteinr@pepperlaw.com
                                             adlerr@pepperlaw.com

                                             Attorneys for Defendant
                                             Arthur T. Dougherty

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Plaintiffs
420 Lexington Avenue
New York, New York 10170
212-687-7410

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

------------------------------------------------------x
U.S. RE COMPANIES, INC. and its affiliates,    :

      Plaintiffs,    :

                      :

-against-    :

ARTHUR T. DOUGHERTY,    :

      Defendant.    :

                      :
------------------------------------------------------x

**SUMMONS**

Index No.: 032236/2011

Purchased on September 1, 2011

To the above-named Defendant:

     **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorneys, at the address stated below, an Answer to the attached Complaint.

     If this Summons was personally served upon you in the State of New York, the Answer must be served within twenty days after service of the Summons, exclusive of the day of service. If the Summons was not personally delivered to you within the State of New York, the Answer must be served within thirty days after service of the Summons.

     If you do not serve an Answer to the attached complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the complaint.

     The action will be heard in the Supreme Court of the State of New York, in and for the County of Rockland. The basis of the venue designated is the principal place of business of Plaintiffs. Plaintiffs have their principal place of business at: One Blue Hill Plaza, Pearl River, New York.

**Defendant's Address:**
Arthur Dougherty, 15 Heron Road, Norwalk, Connecticut, 06855

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Plaintiffs
420 Lexington Avenue
New York, New York 10170
212-687-7410

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---------------------------------------------------------x
U.S. RE COMPANIES, INC. and its affiliates,     :

                                      :

                 Plaintiffs,     :

                                        :

         -against-         :

                                          :

ARTHUR T. DOUGHERTY,         :

                                          :

                 Defendant.     :

                                        :
---------------------------------------------------------x

**COMPLAINT**

Index No.: 032236/2011

U.S. RE Companies, Inc. and its affiliates, including U.S. RE Corporation ("U.S. RE, collectively, the "Plaintiffs") by their attorneys, Clifton Budd & DeMaria, LLP, as and for their Complaint against Arthur T. Dougherty, ("Dougherty" or "Defendant"), allege as follows:

### NATURE OF THE ACTION

1.    This action concerns Dougherty's wrongful, intentional, and unlawful misappropriation of Plaintiffs' confidential and proprietary information, in violation of contractual obligations, and in furtherance of unfair competition, his breach of fiduciary duty and loyalty to U.S. RE and his soliciting an employee to leave U.S. RE's employment, in violation of a contractual agreement not to engage in such solicitation. Dougherty also disclosed or will disclose confidential client information to his current employer, Holborn Corporation, a competitor of Plaintiffs, in an effort to steal Plaintiffs' current and prospective clients, using knowledge acquired while employed by U.S. RE,

Dated: September 1, 2011
      New York, New York

Respectfully submitted,

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Plaintiffs

By: _____
    Carlyle M. Dunaway, Jr.
    420 Lexington Avenue, Suite 420
    New York, New York 10170
    (212) 687-7410

all of which has resulted and will continue to result in serious economic harm to Plaintiffs. Holborn will benefit from these wrongful acts by soliciting Plaintiffs' clients and employees, using the confidential information Dougherty wrongly disclosed. Holborn is aware of Dougherty's contractual obligations and, on information.

## THE PARTIES

2.      U.S. RE Companies, Inc. is a Delaware business corporation with a principal place of business at One Blue Hill Plaza, Pearl River, New York.

3.      U.S. RE Corporation is a Delaware business corporation with a principal place of business at One Blue Hill Plaza, Pearl River, New York.

4.      Holborn Corporation is a business corporation with a principal place of business at 88 Pine Street, New York, New York.

5.      Dougherty is an individual residing at 15 Heron Road, Norwalk, Connecticut.

6.      U.S. RE has employed Dougherty from September 4, 2007 through September 6, 2011. His most recent title was Senior Vice President. He was also a Director of U.S. RE. He had responsibility for U.S. RE's domestic products for the United States and was the head of U.S. RE's United States reinsurance business.

7       U.S. RE employed Dougherty and paid him a substantial sum of money, in exchange for receipt of a voluntarily executed Employee Confidentiality Agreement, ("Confidentiality Agreement") (a copy of which is attached as Exhibit "A") and Confidentiality and Non-Competition Agreement ("Non-Competition Agreement") (a copy of which is attached as Exhibit "B").

8.      Dougherty failed and refused to comply with his contractual obligations to Plaintiffs, pursuant to the Confidentiality Agreement and the Non-Competition

2

Agreement, which obligations remain unfulfilled.   Dougherty also has breached his fiduciary duty to U.S.RE, as an executive employee and Director of U.S. RE.

## FACTS COMMON TO ALL CLAIMS

9.     U.S. RE Companies, Inc. is the parent and holding company for the U.S. RE Group, a financial services firm involved in the facilitation of risk transfer and asset protection for insurance and reinsurance buyers.  Affiliates of U.S. RE Companies, Inc. specialize in providing reinsurance brokerage and consulting services, underwriting, program, risk and claims management, consulting services for mergers and acquisitions and investment banking activities, as well as consulting, facilitation and management of captive insurance programs and other alternative risk transfer mechanisms.

10.     U.S. RE is a subsidiary of U.S. RE Companies, Inc. and is one of the world's largest reinsurance brokers with clients around the globe. U.S. RE is active in the placement of Treaty, Program and Facultative reinsurance. In addition to the placement of so-called conventional reinsurance, U.S. RE Corp. is also an acknowledged leader throughout the world in the development and placement of non-traditional reinsurance mechanisms including various proprietary products.

### Holborn is U.S. RE's Direct Competitor

11.     Holborn and U.S. RE directly compete in certain markets and business areas, providing the same or very similar products or services.

### U.S. RE's Confidential Information

12.     During the course of his employment at U.S. RE, Dougherty regularly had access to, and was entrusted with, sensitive financial and propriety information concerning business of U.S. RE's clients.   The compilation of such information constitutes the trade secrets of U.S. RE. Dougherty used such confidential information to

3

service U.S. RE customers. Dougherty, thus, had access to information not readily available to U.S. RE's competitors. Such information was closely held within U.S RE and was known to only a few employees within U.S. RE and to current and prospective clients.

**U.S. RE's Efforts to Protect its<br>Confidential Information, Customers, and Employees**

13.    U.S. RE places great importance on its confidential information.

14.    U.S. RE takes measures vigorously to protect its confidential, trade secret information, by having its employees sign Employee Confidentiality Agreements. As a matter of company policy, the Employee Confidentiality Agreement has been standard for at least the past fifteen years. On September 5, 2007, Dougherty voluntarily executed an Employee Confidentiality Agreement (see Exhibit "A").

In pertinent part, Dougherty's Employee Confidentiality Agreement provides:

> Confidential information, as used in this agreement, includes any information which is not and does not become common knowledge among, or readily available to, competitors or other companies who may like to possess such confidential information or may find it useful. Confidential information includes, but not by way of limitation, certain information relating to the affairs, business, clients or other business relationships of the Company or its affiliates, items in research or development, trade secrets, financial studies or analyses, new products or new uses for old products, merchandising and selling techniques, long-range planning, financial plans and results, etc. I agree that, excepting third parties who have signed a confidentiality agreement with the Company regarding the confidential information at issue, I will not disclose such information to third persons without first having obtained written permission from the Company. This requirement is not limited in time to the duration of my employment but extends after my employment, irrespective of the reason for its termination.
>
> Further, I will not use any such confidential information for my own purposes or for the benefit of any person, firm, association or

4

corporation and shall use my best efforts to prevent the disclosure of any such confidential information by others.

15.    Further, U.S. RE also asks employees to agree, that after their employment terminates, they will not solicit, for a third party, Company employees to leave U.S.RE employment. On August 30, 2007, Dougherty agreed to the restriction, when Dougherty voluntarily executed the Non-Competition Agreement (see Exhibit "B"). In pertinent part, Dougherty's Confidentiality and Non-Competition Agreement provides:

> 2. NON-COMPETITION AGREEMENT. If the Employee's employment with the Company is terminated by the Employee for any reason, or is terminated by the Company for Good Cause, the Employee agrees, for a period of two (2) years after such termination, not to (a) solicit (directly or indirectly) an employee of any company with the U.S. RE Companies, Inc. group or (b) solicit (directly or indirectly), join, provide services to, advise, give assistance to, or contact any person or entity who was a client or prospective client of the Company or any of its subsidiaries or affiliates at the time of, or within twelve (12) months prior to, such termination, or any person who is an employee of such person or entity, with respect to the provision, by the Employee on behalf of himself or any other person or entity, of services in competition with the Company or any of its subsidiaries or affiliates.

16.    In consideration of U.S. RE's receipt Dougherty's voluntarily executed Employee Confidentiality Agreement and Confidentiality and Non-Competition Agreement, U.S. RE employed Dougherty and paid Dougherty a substantial sum of money. Dougherty's final base annual salary was $275,000, plus an annual automobile allowance of $16,500. Dougherty also received a substantial benefits package.

5

### Dougherty Breached His Fiduciary Duty of Loyalty to U.S. RE

17.     During his U.S. RE employment, Dougherty on multiple occasions obstructed U.S. RE's attempts to secure reinsurance business.

18.     On information and belief, for a period of time, while employed by U.S. RE, Dougherty was directly or indirectly in contact with Holborn to disclose U.S. RE's business prospects.

### Dougherty's Resignation from U.S. RE

19.     On August 22, 2011, Dougherty communicated his resignation to U.S. RE in a letter to Tal P. Piccone, Plaintiffs' President and Chief Executive Officer.

20.     In his letter, Dougherty stated that Dougherty's resignation would be effective, September 6, 2011. That representation turned out to be untrue.

21.     On August 25, 2011, U.S. RE learned that, despite Dougherty having told Piccone on August 22, 2011 that Dougherty's resignation from U.S. RE would not be effective, until September 6, 2011, Dougherty was already working for Holborn.

22.     By letter, dated August 25, 2011, Sandra G. Blundetto, Esq., U.S. RE Companies, Inc.'s Senior Vice President and General Counsel, sent Dougherty a letter reminding him of his obligations under the Employee Confidentiality Agreement and Confidentiality and Non-Competition Agreement, and included copies of the agreements.

23.     By letter sent Federal Express, dated August 25, 2011, Blundetto also sent Frank Harrison, Holborn's Chief Executive Officer a letter, notifying Harrison of Dougherty's obligations to U.S. RE, and enclosing a copy of Blundetto's letter to Dougherty, as well as copies of Dougherty's Confidentiality and Non-Competition Agreements. Ultimately, U.S. RE did not receive the business.

6

**U.S. RE Learns About Dougherty's Wrongful Acts**

24.     Upon information and belief, Dougherty solicited Shinji Ueda, a highly valued U.S. RE employee, who had very worked closely with Dougherty, to abandon his employment to go to work with him at Holborn.

25.     During 2011, while still working for U.S. RE, Dougherty failed aggressively to pursue certain new prospective business. Dougherty claimed that U.S. RE did not have the expertise to handle the business, but Dougherty knew that that U.S. RE did have the expertise. Because of Dougherty's refusal, other U.S. RE employees had to pursue the business. Ultimately, U.S. RE did not receive the business.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment as to the Enforceability of the Employee Confidentiality Agreement)**

26.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 25 of the Complaint as if fully set forth herein.

27.     U.S. RE and Dougherty are parties to an enforceable contract, the Confidentiality Agreement.

28.     Dougherty's conduct threatens to breach the Employee Confidentiality Agreement.

29.     Dougherty's conduct threatens to harm Plaintiffs.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment as to the Enforceability of the Non-Competition Agreement)**

30      Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 29 of the Complaint as if fully set forth herein.

31.     U.S. RE and Dougherty are parties to an enforceable contract, the Non-Competition Agreement.

7

32. Dougherty's conduct threatened to breach the Non-Competition Agreement.

33. Dougherty's conduct threatens to harm Plaintiffs.

### THIRD CAUSE OF ACTION
#### (Breach of Contract)

34. Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 33 of the Complaint as if fully set forth herein.

35. U.S. RE and Dougherty are parties to an enforceable contract, the Confidentiality Agreement.

36. On information and belief, Dougherty's conduct breached the Confidentiality Agreement.

37. Dougherty's conduct has harmed and continues to harm Plaintiffs.

### FOURTH CAUSE OF ACTION
#### (Breach of Contract)

38. Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 37 of the Complaint as if fully set forth herein.

39. U.S. RE and Dougherty are parties to an enforceable contract, the Non-Competition Agreement.

40. On information and belief, Dougherty's conduct breached the Non-Competition Agreement.

41. Dougherty's conduct has harmed and continues to harm Plaintiffs.

### FIFTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty)

42. Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 41 of the Complaint as if fully set forth herein.

8

43.     U.S. RE employed Dougherty as a Director and Senior Vice President.

44.     While employed by U.S. RE, Dougherty did not act in good faith and in U.S. RE's best interest.

45.     While employed by U.S. RE, Dougherty did not exert his best efforts on behalf of U.S. RE.

46.     While employed by U.S. RE, Dougherty failed to provide U.S. RE with his undivided and unqualified loyalty and acted in a manner contrary to the interests of U.S. RE.

47.     Dougherty's conduct has harmed and continues to harm Plaintiffs.

### SIXTH CAUSE OF ACTION
### (Unfair Competition)

48.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 47 of the Complaint as if fully set forth herein.

49.     Defendant has wrongfully misappropriated Plaintiffs' valuable assets, including, but not limited to, knowledge Plaintiffs' trade secrets, to which Dougherty had access while employed by U.S. RE, and the confidential financial and proprietary information underlying Plaintiffs' business.

50.     Defendant has exploited and continues to exploit Plaintiffs' misappropriated assets, in bad faith, for the purpose of gaining an unfair competitive advantage.

51.     Defendant's conduct has harmed and continues to harm Plaintiffs.

### SEVENTH CAUSE OF ACTION
### (Tortious Interference with Economic Advantage)

52.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 51 of the Complaint as if fully set forth herein.

9

53.     Dougherty had knowledge of Plaintiffs' economic advantage concerning particular confidential deals in development between Plaintiffs and their clients.

54.     Dougherty knowingly, maliciously, unfairly, dishonestly, and improperly interfered with the business relationships between Plaintiffs and their clients.

55.     Dougherty's actions were undertaken with malice, with reckless disregard for Plaintiff's rights and through the use of improper means.

56.     Defendant's conduct has harmed and continues to harm Plaintiffs.

**WHEREFORE,** Plaintiffs demands judgment against Defendant:

a.      awarding compensatory damages and consequential damages, including interest, in an amount to be determined at trial;

b.      awarding punitive damages;

c.      declaring that the Confidentiality Agreement is enforceable;

d.      declaring that the Non-Competition Agreement is enforceable;

e.      declaring that Dougherty may not disclose any Confidential Information, under the terms of the Employee Confidentiality Agreement;

f.      ordering expedited discovery;

g.      awarding costs and disbursements of this action; and

h.      awarding such other further relief, as the Court deems just and equitable.

Dated: New York, New York
       September 1, 2011

Respectfully submitted,

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Plaintiffs

Carlyle M. Dunaway, Jr.
420 Lexington Avenue
New York, New York 10170
212-687-7410

10